UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

KIMBERLY MARCOUX,      )
    *Plaintiff*          )
                     )    Docket No.: 2:25-cv-00309-cr
      v.           )
                     )
CHRISTINA WETTSTEIN    )
    *Defendant*       )

## **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Kimberly Marcoux ("Marcoux"), by and through her undersigned counsel, respectfully submits this memorandum of law in opposition to Defendant Christina Wettstein's ("Wettstein" or "Defendant") Motion to Dismiss dated May 6, 2025 (the "Motion").

Defendant's Motion should be denied because it rests on a fundamental error: the assertion that the entities at issue are North Carolina limited liability companies governed by North Carolina law. They are not. Coterie White, LLC ("CW") and Melange de Blanc, LLC ("MDB") (collectively, the "Entities") are Vermont limited liability companies, formed and operating under Vermont law.

Wettstein's alleged misconduct – and the harm to Marcoux – occurred while both parties were member-managers of these Vermont Entities, and after they had abandoned the North Carolina LLCs in favor of conducting business exclusively through the Vermont Entities. Because Marcoux's Complaint asserts well-pleaded claims under Vermont law arising from Wettstein's misconduct while managing the Vermont LLCs, the Motion to Dismiss should be denied in its entirety.

### I.   **Factual Background**

Marcoux and Wettstein are 50-50 owners of CW and MDB, both of which are Vermont domestic limited liability companies. Compl. ¶¶ 3-5. Yet, remarkably, Defendant's Motion does

not even acknowledge this critical fact. Instead, Wettstein selectively cites Marcoux's allegation that the Entities were "initially incorporated in the State of North Carolina" to support her flawed assertion that North Carolina law governs this dispute.

Initially, MDB was a North Carolina LLC with no operating agreement. *Id.* at ¶ 8. CW was also initially formed in North Carolina and had an unsigned and undated operating agreement that Marcoux alleged was effective notwithstanding the fact that it was neither signed by the parties nor dated. *Id.* at ¶ 9. However, Marcoux never alleged that this agreement governed the Parties' entire business relationship or that it applied to the Entities organized under Vermont law.

In fact, Marcoux clearly alleged that "[o]n or about July of 2022, after Wettstein moved from North Carolina to San Antonio, Texas" the Parties "chose to move CW and MDB to Vermont. *Id.* at ¶ 11. As a result, CW was formally incorporated in Vermont as a domestic limited liability company on September 13, 2022 and MDB was incorporated in Vermont as a domestic limited liability company on September 19, 2022. *Id.* at ¶¶ 12-13; *See also* Exhibit 1 and Exhibit 2, true and accurate copies of the State of Vermont Office of Secretary of State Articles of Organization granted to CW and MDB.

The original North Carolina entities have since been abandoned. They were administratively dissolved, and neither party has filed annual reports for CW or MDB with the North Carolina Secretary of State since 2022. *See* Exhibit 3, true and accurate copies of CW's Certificate of Administrative Dissolution dated November 20, 2024 and MDB's Certificate of Administrative Dissolution, together with notices of dissolution and applicable filing history for the Entities. As of September of 2022, the Parties operated their business exclusively through the Vermont Entities.

In her Motion, Wettstein accurately alleges that Marcoux and Wettstein had a falling out "while Plaintiff was on medical leave." Mot. at p. 1. That leave followed a traumatic brain injury that Marcoux sustained in a hit-and-run collision on December 22, 2023. Compl. ¶¶ 57-58.

As detailed in the Complaint, all of Wettstein's alleged misconduct occurred after the Parties incorporated CW and MDB as Vermont LLCs and when they operated their businesses exclusively through the Vermont Entities. For example, in April 2023, the Parties solidified "their future plans to expand CW and MDB beyond the United States." Compl. ¶ 51. These expansion plans necessarily related to the Vermont LLCs – not the defunct North Carolina entities.

Marcoux further alleges that Wettstein wrongfully removed Marcoux from payroll in June of 2024. *Id.* ¶ 77. When Marcoux returned from leave on July 1, 2024, Wettstein pressured Marcoux to sell her 50% interest in the Vermont Entities while withholding critical financial information. *Id.* ¶¶ 83. Moreover, Wettstein misappropriated the CW EU opportunity (expanding the Entities business into Europe) after Marcoux was injured on December 22, 2023. *Id.* ¶ 95.

Wettstein also used CW and MDB resources, funds, employees and contractors that worked for and were paid by the Entities to benefit a competitor that she helped establish while Marcoux was on leave. *Id.* ¶ 98. In fact, Wettstein shared unrestricted access to CW and MDB's intellectual property and confidential information with third parties to benefit a competitor that she helped establish, without Marcoux's knowledge or approval or any NDA. *Id.* ¶ 101. When Marcoux asked Wettstein about the CW EU plans when she returned from medical leave, Wettstein falsely informed Marcoux she was not pursuing CW EU. *Id.* ¶ 104. In short, "while Marcoux was out on medical leave, Wettstein stole their idea to expand CW to Europe and [sought to] replace Marcoux" with new partners. *Id.* ¶ 113. All of this conduct took place while the business were operated

through the Vermont-formed Entities, rendering Defendant's focus on North Carolina law entirely misplace.

## II.   <u>Legal Standard</u>

In adjudicating a motion pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "guided by '[t]wo working principles[.]'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alteration in original).  First, "a court must accept as true all of the allegations contained in a complaint[,]" a "tenet" that is, however, "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").  Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss" and a claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678–79.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "Determining whether a complaint states a plausible claim for relief will . . . be a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  A plausible claim includes factual allegations that permit the court "to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.  A plaintiff is required to allege enough facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  As set forth

4

in more detail below, Marcoux's Complaint contains sufficient factual allegations, which accepted as true, state facially plausible claims to relief.

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).

## III.   <u>Argument</u>

The crux of Defendant's Motion is her assertion that, under the "Operating Agreement, the Parties' relationship is governed by North Carolina law." Mot. at p. 2. That argument fails. At all relevant times, the Parties operated the Entities as Vermont domestic limited liability companies, and those Entities are governed by Vermont law – not North Carolina law.

Wettstein's further contention that Marcoux lacks standing because "member of LLCS do not owe any fiduciary duties to the other members, nor can members enforce rights of or duties owed to the LLC" under North Carolina law is equally misplaced. Because Vermont law governs, and because the Complaint alleges direct injuries to Marcoux as a co-equal member of the Vermont LLCs, her claims are properly brought. Accordingly, the Motion to Dismiss should be denied.

### A.  **Vermont Law Governs Because All of Defendant's Wrongful Acts Occurred While the Parties Were Operating Vermont Limited Liability Companies.**

As alleged in the Complaint, the Parties agreed in or around July 2022 to abandon their North Carolina entities and reincorporate in Vermont, where Marcoux resided, due in part to Wettstein's relocation to Texas and the possibility of future moves tied to her spouse's military service. Compl. ¶ 11. In accordance with that decision, CW was incorporated in Vermont on September 13, 2022, and MDB followed on September 19, 2022. *Id.* at ¶¶ 12-13, <u>Ex. 1</u> & <u>Ex. 2</u>.

Wettstein's argument that "[p]er the Operating Agreement, the Parties' relationship is governed by North Carolina law" lacks both factual and legal support. Mot. at p. 2. First, MDB never had an operating agreement. Compl. ¶ 8. The operating agreement applied only to CW while it was a North Carolina entity, and the agreement was never executed or updated following the Parties' decision to reincorporate in Vermont. Once CW and MDB became Vermont limited liability companies, any North Carolina agreement became legally and practically irrelevant.

Under Vermont law, the governance of a limited liability company is determined by its place of formation. Indeed, 11 V.S.A. § 4011(f) provides that "[t]he law of this State governs: (1) the internal affairs of a limited liability company; and (2) the liability of a member as a member and a manager as a manager for debts, obligations, or other liabilities of a limited liability company." "The filing of the articles of organization by the Secretary of State is conclusive proof that the organizers satisfied the conditions precedent to the creation of the organization" 21 V.S.A. § 4022(c). The Vermont Secretary of State accepted the articles of organization for CW and MDB on September 13 and 19, 2022, respectively, confirming hat from those dates forward, both Entities were governed by Vermont Law. *See* Ex. 1 & Ex. 2.

As a matter of law and fact, once the Parties chose to form and operate CW and MDB as Vermont limited liability companies, Vermont law governed their relationship. The prior North Carolina entities and the unsigned operating agreement no longer controlled. Wettstein's argument to the contrary disregards both the Complaint's allegations and the governing statutes.

Nor can Wettstein credibly argue that Marcoux is judicially estopped from asserting the applicability of Vermont law. Marcoux never alleged that the operating agreement generally governed the Parties' relationship or that it applied after the Entities were reincorporated in Vermont and the North Carolina LLCs were abandoned. Nor could she. As set forth above, once

6

CW and MDB were organized under Vermont's LLC laws, they were governed by Vermont law as a matter of law.  At most, Marcoux acknowledged that the unsigned, undated North Carolina operating agreement was treated as effective during CW's time as a North Carolina LLC.  Compl. ¶ 10.  But that limited acknowledgement does not support Wettstein's argument that the agreement – or North Carolina law – continued to control after the Parties abandoned their North Carolina LLCs and formed the Vermont Entities as domestic limited liability companies.

Moreover, Wettstein's argument ignores that the Complaint consistently relies on Vermont law.  For example, Marcoux alleges that Wettstein breached the duties of loyalty that she owed to both the Entities and to Marcoux under Vermont law, namely 11 V.S.A. § 4059(b).  Compl. ¶¶ 198-200.  Wettstein cannot ignore these statutory references and cherry-pick a single, narrow allegation to manufacture the appearance of a North Caroline choice of law dispute.

In short, the Complaint does not allege – nor can it reasonable be construed to allege – that North Carolina law governs the Parties' current dispute.  Because CW and MDB are Vermont LLCs and the alleged misconduct occurred entirely after reincorporation, Vermont law applies.  The Motion should be denied.

### B.  Marcoux Has Standing to Bring Both Direct and Derivative Claims

Wettstein's argument that Marcoux lacks standing because her claims involve "rights belonging to their LLCs, not to Plaintiff," and that a member in an LLC lacks "standing to enforce the rights belonging to the LLC" under North Carolina law also fails.  Mot. at p. 4.  As discussed above, Vermont law, not North Carolina law, applies.  Under Vermont's LLC statutes, Marcoux has standing to pursue both direct and derivative claims.

i.    **Vermont Law Authorizes Members to Bring Both Direct and Derivative Claims.**

Under Vermont law, a member of a LLC "may maintain a direct action against another member. . . to enforce the member's rights and protect the member's interest. . . under this title, or arising independently of the membership relationship." 11 V.S.A. § 4131(a).  To maintain a direct action, the member "must prove an actual or threatened injury to the member that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company.  11 V.S.A. § 4131(b).

Vermont law also permits derivative actions.  Pursuant to 11 V.S.A. § 4132, a member may bring a derivative action to enforce a right of the LLC if: (1) "the member first makes a demand on the other members. . . requesting that they cause the company to bring an action to enforce the right, and the other members. . . do not bring the action within a reasonable time; or (2) a demand. . . would be futile."

Vermont courts have explained that:

> "[t]he general principles governing shareholder suits are well settled. In a derivative suit, the shareholder sues on behalf of the corporation for harm done to the corporation; in a direct action, the shareholder brings suit individually, or on behalf of a class of shareholders, for injuries done to them in their individual capacities." *Bovee v. Lyndonville Sav. Bank & Tr. Co.*, 174 Vt. 507, 508 (2002) (citing *Kramer v. W. Pac. Indus., Inc.,* 546 A.2d 348, 351 (Del.1988); *Lash v. Lash Furniture Co. of Barre, Inc.,* 130 Vt. 517, 522 (1972)) (shareholder derivative action is one brought in the interest of corporation). "To have standing to sue individually, the shareholder must allege an injury separate and distinct from other shareholders, or a wrong involving a contractual right of the shareholder that exists independently of any right of the corporation." *Id*. (citing *Kramer,* 546 A.2d at 351).

*Brining v. Hayes*, 2018 WL 8666304, at *2 (Vt.Super. Nov. 03, 2018).  Notably, "the same set of facts may give rise to both direct and derivative claims."  *Technology, Inc. v. Casella Waste*

*Systems*, 2010 WL 2259052, at *2 (Vt. Super. Feb. 2010) (citing *Loral Space & Communications, Inc. v. Highland Crusader Offshore Partners, L.P.*, 977 A.2d 867, 869-70 (Del. 2009)).

Therefore, under Vermont law, Marcoux has standing to assert direct claims for injuries she personally suffered, including those stemming from Wettstein's efforts to freeze her out of the Entities, misappropriate business opportunities, and explain the Entities' resources for a competing venture that she helped create. To the extent that any claim is deemed derivative, Marcoux also has standing to assert them under Vermont's LLC statues.

### ii.   Marcoux's Claims are Direct and Repleading Them as Derivative Would Elevate Form Over Substance.

Marcoux has standing to assert direct claims against Wettstein because she has alleged injuries that are separate and distinct from those suffered by any other member of CW or MDB. *Bovee*, 174 Vt. at 508. Given that Marcoux and Wettstein are the only members of the Entities, Marcoux need only demonstrate that her injuries differ from those suffered by Wettstein. Marcoux's Complaint easily meets that standard.

For example, Marcoux alleges that while she was out on medical leave, Wettstein unilaterally pursued "the Coterie White Europe idea without Marcoux, using resources, funds, employees and contractors that worked for and were paid by [the Entities], all without Marcoux's knowledge, consent or approval." Compl. ¶ 98. She further alleges that Wettstein created a competing entity, Voeux Blancs ("VB" or "VB Project"), to appropriate the CW EU opportunity and misappropriated the Entities' intellectual property and assets in doing so. *Id.* ¶ 106. Wettstein concealed these plans from Marcoux, instructed others not to inform her, and even directed the use of CW's funds to support VB. *Id.* ¶ 108.

The Complaint also alleges that "[s]ince July 26, 2024, Wettstein has devoted a significant amount of her time and effort to CW EU/VB, a competing business, as well as two private clients,

Ines di Santo and Untamed Petals, that were former CW designers that she stole from CW" and Wettstein also helped designers terminate their exclusive contracts with CW so that they could work with VB, which competed with CW and used the Entities' funds to benefit herself individually. *Id.* ¶ 120. According to Marcoux, these acts diverted over $500,000 in revenue that otherwise would have gone to CW. *Id.* ¶ 122; *See also* Compl. ¶¶ 130, 139, 148, 164, 184.

Taken as true, these allegations demonstrate that Wettstein's wrongful conduct caused direct harm to Marcoux: financial losses, loss of her business interest, damage her Marcoux's professional reputation, and exclusion from a corporate opportunity that she helped develop, which belonged to CW and not Wettstein individually. Crucially, Wettstein herself was not injured by her wrongful acts. To the contrary, Wettstein personally benefitted from her misconduct. Because Wettstein's acts injured Marcoux in her individual capacity as a 50% owner while enriching herself, Marcoux's claims are properly brought as direct actions. In short, Wettstein's wrongful acts competing with CW and MDB caused Marcoux an injury that was separate and distinct from any other member because at the same time this conduct was injuring Marcoux, Wettstein personally benefitted from her misconduct.

Requiring Marcoux to replead her claims as derivative would elevate form over function and needlessly delay the resolution of this case. Vermont law does not require such rigidity where the injuries alleged are clearly personal and distinct.

### iii. The Policies Underlying Derivative Actions Do Not Apply in This Dispute Between the Only Two Members of Closely-Held LLCs.

Courts have increasingly recognized that shareholders and members of closely held corporations and LLCs may bring direct claims for breach of fiduciary duty. *See* § 9:48. Suits for breach of fiduciary duties: direct suits in LLCs, 2 Close Corp and LLCs: Law and Practice § 9:48 (Rev. 3d ed.). As that treatise explains:

> [t]he distinction between suits that are appropriate for direct
> litigation and those that should be filed as derivative actions on
> behalf of the corporation has been frequently litigated. If, as in
> many LLCs and close corporations, there are essentially just two
> sides to the dispute, the insiders who control the entity and the
> outsiders who have been disadvantaged by actions taken by the
> entity, many courts have been willing to find a direct claim
> appropriate in LLCs, as they have in close corporations. . . In a
> closely held entity the distinction between direct and derivative
> claims can appear academic. When an entity is controlled by one
> owner, who causes the entity to take an action that benefits the
> controller but harms the other owner (for example, by raising the
> controller's salary and reducing funds for distribution to the other
> owner), the harm to the minority owner appears quite direct. In such
> a setting, some courts have not required the plaintiffs to comply with
> the derivative requirements at all, while other courts have
> recognized such claims as derivative but then awarded damages to
> the individual shareholder, when there is only one other shareholder
> beyond the defendant who has been found to breach a duty.

*Id.* For example, in *Durham v. Durham*, 151 N.H. 757, 762 (2005), the New Hampshire Supreme

Court held that "where the principles underlying the derivative proceeding are not served, the trial

court should have discretion to allow the plaintiff to pursue a direct claim against the corporate

officers." *Id.* The *Durham* Court identified four key purposes served by derivative actions: (1)

avoiding a multiplicity of shareholder lawsuits; (2) protecting corporate creditors by returning

recoveries to the company; (3) safeguarding the interests of all shareholders; and (4) adequately

compensating the injured shareholder by enhancing the value of their shares. Id. at 761 (citing

*Thomas v. Dickson*, 250 Ga. 772, 301 S.E.2d 49, 51 (1983)).

Here, those purposes are not served by requiring Marcoux to bring her claims derivatively.

First, there is no risk of a multiplicity of lawsuits—all members of the LLCs are already before the

Court. Second, there is no indication that corporate creditors require protection. Third, because

there are only two members—Marcoux and Wettstein—there are no outside shareholders whose

interests could be prejudiced. Finally, requiring Marcoux to bring her claims derivatively would

lead to an illogical outcome: if she prevails, Wettstein, the wrongdoer, would share in the recovery. Allowing Marcoux to proceed directly avoids that unjust result.

      iv.    **Even If Marcoux's Claims are Deemed to Be Derivative, She Has Standing Under Vermont Law.**

Even if the Court construes Marcoux's claims as derivative rather than direct, she satisfies all statutory requirements to maintain a derivative action under Vermont law.

First, under 11 V.S.A. § 4132, a plaintiff may bring a derivative action if: (1) she made a demand on the other members to bring an action to enforce its rights, and they failed to do so within a reasonable time; or (2) such a demand would be futile. Marcoux's Complaint pleads facts establishing that any demand would be futile. For example, Marcoux alleged that after Wettstein abruptly terminated her employment with CW, she made multiple requests to Wettstein to obtain information that she needed to operate the Entities, which Wettstein ignored. Compl. ¶ 120.c. When Marcoux asked Wettstein for information about designers that were separating from CW, Wettstein intentionally and purposefully withheld a significant amount of information relating to the off-boarding terms between CW and designers so that Wettstein could divert business to CW EU/VB, at the expense of Marcoux and the Entities. *Id.* ¶¶ 136-39. Marcoux further alleged that Wettstein "intentionally and maliciously refus[ed] to pursue legal action against departing employees, against the advice of corporate counsel and Marcoux's request, to assert claims that they were misappropriating CW and MDB confidential and trade secret information and then using such confidential and trade secret information on behalf of Voeux Blancs, a competitor of the [Two Entities] that Wettstein started. . . even though these action were irreparably harming the [Two Entities]." *Id.* ¶ 184(i).l.

These facts support a reasonable inference that any demand on Wettstein would have been futile, particular given that she is the alleged wrongdoer. It is implausible to expect that Wettstein would authorize the Entities to bring claims against herself.

Second, under 11 V.S.A. § 4133, a derivative plaintiff must be a member of the LLC at the time of the alleged misconduct and when the suit is filed. Marcoux satisfies both requirements. She has been a member of CW and MDB at all relevant times.

Third, 11 V.S.A. § 4134 requires a derivative complaint to state with particularity either: (1) the date and content of plaintiff's demand and the response; or (2) why demand should be excused as futile. As set forth above, Marcoux's allegations describe with specificity a pattern of ignored demands and obstructive behavior by Wettstein, establishing the futility of demand.

Accordingly, if Marcoux's claims are deemed derivative, she has standing to assert them under Vermont law.

**C. Wettstein Breached Her Fiduciary Duties to Marcoux Under Vermont Law.**

Wettstein's reliance on North Carolina law ignores the fact that CW and MDB are Vermont domestic limited liability companies. As such, the Parties' rights and obligations are governed by Vermont law, including the fiduciary duties imposed by 11 V.S.A. § 4059. Under 11 V.S.A. § 4059(a), a member of a Vermont LLC owes both the company and its other members two core fiduciary duties: (1) the duty of loyalty and (2) the duty of care. 11 V.S.A. § 4059(a).

The duty of loyalty, set forth in 11 V.S.A. § 4059(b), requires a member to:

> (1) to account to the company and hold as trustee for it any property, profit, or benefit derived by the member in the conduct. . . of the company's business or derived from a use by the member of the company's property, including the appropriation of the company's opportunity;
> (2) to refrain from dealing with the company in the conduct. . . of the company's business as or on behalf of a party having an interest adverse to the company; and,

> (3) to refrain from competing with the company in the conduct of
> the company's business before the dissolution of the company.

11 V.S.A. § 4059(b).

The duty of care, pursuant to 11 V.S.A. § 4059(c), requires a member to "refrain from engaging in grossly negligent or reckless conduct." 11 V.S.A. § 4059(c). Additionally, a member of a LLC must act "consistently with the obligation of good faith and fair dealing" towards both the company and its members 11 V.S.A. § 4059(d).

Vermont courts have made it clear that these duties are to be taken seriously. In *Hirchak v. Hirchak*, 2024 WL 945168, at *17 (Vt. Super. Ct. Jan. 31, 2024), the court reiterated that "[t]he relationship of a director-stockholder to his corporation binds him to use the utmost good faith and loyalty for the furtherance and advancement of the interest of that corporation. He is not permitted to make profit for himself in the transaction of the business of the corporation, against its interest.'" (quoting *Lash v. Lash Furniture Co. of Barre*, 130 Vt. 517, 522, (1972); *J.A. Morrissey, Inc. v. Smejkal*, 2010 VT 66 ¶ 11.

In this case, Marcoux's allegations, taken as true, describe clear breaches of these fiduciary duties. Marcoux alleged that Wettstein: (a) diverted corporate opportunities for personal gain; (b) misused company property and funds to create a competing venture; (c) withheld critical information from her business partner; (d) acted in direct competition with CW and MDB while still a member and manager; (e) refused to act in the best interest of the companies when prompted; (f) assisted third parties in misappropriating the Entities' intellectual property and trade secrets to benefit a competitor; and (g) stole business and clients from the Entities for her own personal gain. These actions directly violate the fiduciary duties Wettstein owed to both the Entities and to Marcoux as the only other member. Accordingly, Marcoux has adequately pleaded a claim for breach of fiduciary duty under Vermont law.

**D. Marcoux has Standing to Assert Her Claims for Unjust Enrichment, Misappropriation of Trade Secrets, and Tortious Interference.**

Wettstein's argument that Marcoux lacks standing to pursue claims for unjust enrichment, misappropriation of trade secrets (under federal and Vermont law), and tortious interference with contractual relationships is misplaced. Her reliance on North Carolina law is both procedurally and substantively incorrect. Mot. at pp. 5, 7, 8.

First, these claims are properly pleaded as direct claims, not derivative ones. As discussed above, Marcoux has alleged that Wettstein's misconduct caused her injuries that are separate and distinct from any suffered by the Entities themselves or by Wettstein. For example, Marcoux alleges that Wettstein used the Entities' assets and relationships to form a competing business while intentionally excluding Marcoux and diverting valuable business opportunities and revenue. Such conduct harmed Marcoux individually by depriving her of profits, control, and rights as a co-equal member. In contrast, the conduct benefited Wettstein.

Second, North Carolina law does not apply. All of the alleged misconduct giving rise to these claims occurred after July 2022 – after the Parties abandoned their North Carolina LLCs and organized CW and MDB as Vermont domestic limited liability companies. As such, Vermont law governs. Wettstein's continued reliance on North Caroline law to challenge Marcoux's standing fails for that reason alone.

Third, even if any of these claims were construed as derivative in nature, Marcoux has standing under Vermont law to assert them. As detailed above, she meets all the statutory prerequisites for bringing derivative actions under 11 V.S.A. §§ 4132-34.

Taken together, Marcoux has sufficiently alleged plausible claims for unjust enrichment, federal and state trade secret misappropriation, and tortious interference with contract. Her

15

allegations, taken as true, entitle her to relief. Accordingly, the Motion to Dismiss should be denied as to these claims.

### E. Marcoux's Claim for Judicial Dissociation is Properly Pleaded and Not Subject to Dismissal.

Wettstein's argument that Marcoux's claim for judicial dissolution must be dismissed rests on a faulty premise: that North Carolina law governs the claim. As discussed above, CW and MDB became Vermont domestic limited liability companies in September 2022, after the Parties agreed to abandon their Norther Carolina entities. Compl. ¶¶ 12-13; Ex 1 & Ex 2. Since that time, the Entities have operated exclusively under Vermont law. The North Carolina entities have been administratively dissolved, and any operating agreement associated with those entities is legally and factually irrelevant.

Contrary to Wettstein's claim, Marcoux does not ask the Court to "rewrite the Parties' Agreement." Mot. at p. 6. There is no operating agreement governing the Vermont Entities. Rather, Marcoux seeks relief under Vermont's LLC statute, which controls the Parties' relationship by default in the absence of a governing agreement.[1]

As a result, Marcoux has alleged sufficient factual allegations to set forth a viable claim for judicial dissociation of Wettstein under Vermont law. Pursuant to 11 V.S.A. § 4081(5), Marcoux's Complaint contains sufficient allegations to warrant judicial dissociation of Wettstein because Marcoux alleged that Wettstein: (a) engaged in wrongful conduct that has adversely and materially affected. . . the company's business; (b) willfully and persistently materially breached

---

[1] Notably, Wettstein makes no effort to explain why an operating agreement for an entity in NC would govern Vermont Domestic Limited Liability Companies. Moreover, even if the operating agreement was relevant (it is not), it only applied to CW and not MDB. Wettstein also makes no effort to explain how or why it would apply to MDB, particularly given that she concedes that [t]he Court cannot rewrite the parties' Agreement." Mot. at p. 6. But, that is what she herself is attempting to do in her Motion.

duties that she owed the Entities and other members, and (c) engaged in conduct relating to the Entities' business which make it not reasonably practicable to carry on the business with Wettstein as a member.

Marcoux's Complaint alleges facts satisfying each prong of this standard. Marcoux alleges that Wettstein: (a) engaged in self-dealing and diverted business opportunities of the Entities for her own personal gain; (b) materially breached her duties of loyalty and care to both the Entities and Marcux; and (c) acted in ways that have made continued co-ownership untenable, including concealing material facts, misusing company assets, and secretly launching a competing business. These allegations, taken as true, are more than sufficient to state a plausible claim for judicial dissociation under Vermont law. Accordingly, Wettstein's Motion should be denied as to Marcoux's claim for judicial dissolution.

**F.  Marcoux's Negligence Claim is Not Barred by the Economic Loss Rule.**

Wettstein argues that Marcoux's negligence claim is barred by the economic loss rule because she "solely alleges economic injuries which are in fact governed by a contract." Mot. at p. 9. This argument fails for two reasons. First, no contract governed the relationship between Marcoux and Wettstein after the formation of the Vermont limited liability companies. Second, and more importantly, Vermont law recognizes an exception to the economic loss rule where the parties share a "special relationship" that gives rise to a duty of care independent of any contractual obligations. That exception applies here.

Wettstein correctly notes that the "economic loss rule prohibits recovery in tort for purely economic losses." *Id.* (quoting *Long Trail House Condo. Ass'n v. Engelberth Constr., Inc.* 2012 VT 80, ¶10. The rationale behind the economic loss rule is that negligence "law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another." *Gus'*

17

*Catering, Inc. v. Menusoft Sys.*, 171 Vt. 556, 558 (2000) (mem.).   But, courts have recognized several exceptions.   In particular, Vermont Courts have adopted an exception so that the economic loss rule does not bar recovery when the "parties have a special relationship, which creates a duty of care independent of contractual obligations." *EBWS, LLC v. Brittly Corp.*, 2007 VT 37, ¶ 31 (citing *Springfield Hydroelec. Co. v. Copp* 172 Vt. 311, 314 (2001)).   "To fit within this exception, the parties must have a 'special relationship, which creates a duty of care independent of contractual obligations . . . [T]he key is not whether one is licensed in a particular field. . .; rather, the determining factor is the type of relationship created between the parties." *Long Trail House Condo*, 2012 VT 80, ¶ 13 (quoting *EBWS*, 2007 VT 37, ¶ 30); *see also Sutton v. Vermont Regional Center*, 2019 VT 71A, ¶¶ 30-33

In this case, the exception plainly applies.   Marcoux and Wettstein were 50/50 owners and managers of CW and MDB – Vermont limited liability companies that lacked a written operating agreement.   Vermont law imposes fiduciary duties by statutes on all LLC members, including the duty of loyalty and the duty of care.   *See* 11 V.S.A. § 4059.   These statutory duties exist independent of any contractual relationships.

By statute, Wettstein also owed Marcoux a duty of care to refrain from engaging in grossly negligent or reckless conduct, as well as an obligation to discharge her duties to Marcoux "consistently with the obligation of good faith and fair dealing.   11 V.S.A. § 4059.   For example, Marcoux specifically alleged that "[a]s an owner and employee of MDB, Wettstein owed MDB and Marcoux a duty of care to continue to diligently perform her duties for the benefit of MDB." Compl. ¶¶ 272-81.   Wettstein also violated these duties by diverting opportunities, using company assets for personal gain, and acting in a manner that materially harmed both Marcoux and the

Entities.  Importantly, the Parties never had an operating agreement with respect to MDB, and the duty of care arose entirely under Vermont statute – not contract.

Because Vermont law recognizes a duty of care in this context that is independent of any contract, Marcoux's negligence claim is not barred by the economic loss rule.  Wettstein's Motion to Dismiss should therefore be denied as to this claim.

### G.  Marcoux's Complaint Asserts a Valid Claim for Negligent Infliction of Emotional Distress.

Wettstein argues that Marcoux's claim for negligent infliction of emotional distress fails because she has not alleged a physical impact, that she was within the zone of danger, or that a "special relationship" existed.  Mot. at p. 9.  While Wettstein correctly states the general rule that physical harm is typically required to sustain a negligent infliction of emotionaldistress claim under Vermont law, her argument fails because it ignores the detailed factual allegations set forth in Marcoux's Complaint.

Contrary to Wettstein's assertion that Marcoux "has not alleged that she suffered any physical harm," the Complaint clearly alleges multiple forms of physical and psychological injuries resulting from Wettstein's conduct.  Mot. at p. 10.  Specifically, Marcoux alleged:

> As a result of Wettstein's constant intimidation, manipulation, lies, blame shifting, gas lighting, and abusive behavior, Marcoux developed increasing levels of stress and anxiety, has been prescribed anti-anxiety medication and sought medical treatment for strees, anxiety and emotional distress.

> In fact, as a direct and proximate result of Wettstein's conduct described herein, Marcoux has suffered severe emotional ***and physical harm,*** including a diagnosis of PTSD and anxiety, which her therapist and doctor have attributed to Wettstein's Actions.

> Marcoux has also experienced frequent panic attacks, nightmares, and an inability to sleep due to Wettstein's actions.

Compl. ¶¶ 194-96.  Taken as true, as they must be at the motion to dismiss stage, these allegations describe physical manifestations of emotional distress, including diagnosed conditions, panic attacks and psychological responses that are sufficient to meet the physical harm requirement for a negligent infliction of emotional distress claim.

Moreover, Marcoux has also plausibly alleged the existence of a "special relationship" between herself and Wettstein.  As 50/50 co-owners of CW and MDB, Marcoux and Wettstein shared a fiduciary relationship grounded in trust, cooperation, and mutual reliance.  Compl. ¶ 283. In addition, the Complaint adequately alleges that Wettstein's relationship with Marcoux involved "an abuse of power", particularly when Marcoux was out on medical leave.  *Zeno-Ethridge v. Comcast Corp.*, 2024 VT 16, ¶ 18 (citing *Vincent v. DeVries*, 2013 VT 34, ¶¶ 15, 19).

Wettstein herself concedes that she found no precedent holding that business associates can never fall within the "special relationship" exception.  Mot. at p. 10.  But, this is precisely the kind of question that is inappropriate for resolution at the pleading stage on a motion to dismiss.  Given the factual allegations and evolving scope of negligent infliction of emotional distress law in Vermont, Marcoux has more than plausibly stated a claim for relief.   Wettstein's Motion to Dismiss Marcoux's negligent infliction of emotional distress claim fails because Wettstein cannot establish that Marcoux is not entitled to relief as a matter of law.

## IV.     If Marcoux's Claims Are Deemed Derivative, Dismissal Is Not the Appropriate Remedy – Leave to Amend Should be Granted.

To the extent the Court concludes that any of Marcoux's claims are derivative in nature and not properly pleaded as such, dismissal is not appropriate. Rather, Marcoux should be afforded the opportunity to amend her Complaint to replead any derivative claims with additional specificity to cure any technical defects.

Dismissals for insufficient pleadings are disfavored and are "ordinarily [granted] with leave to replead." *Stern v. Gen. Elec. Co.*, 924 F.2d 472, 477 (2d Cir. 1991); *Nagler v. Admiral Corp.*, 248 F.2d 319, 322 (2d Cir. 1957) ("Outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts."); see also *MacSwan v. Merck & Co.*, 602 F. Supp. 3d 466, 481–82 (W.D.N.Y. 2022) ("Leave to amend should be freely given when justice so requires.") (quoting Fed. R. Civ. P. 15(a)).

Marcoux has alleged facts demonstrating that, at a minimum, she could replead her claims with clarity as derivative if necessary. She has also alleged facts supporting the futility of demand and her continued status as a member of the Vermont LLCs. Accordingly, in the event the Court finds technical pleading defects, dismissal should be without prejudice and with leave to amend.

## V.    Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety. In the alternative, to the extent the Court finds any of Marcoux's claims insufficiently pleaded, she respectfully requests leave to amend pursuant to F.R.C.P. 15(a)(2) to cure any technical deficiencies.

Dated: June 30, 2025

DOWNS RACHLIN MARTIN PLLC

*/s/ Jeremy S. Grant*
Jeremy S. Grant
199 Main Street
P.O. Box 190
Burlington, VT 05402-190
Tel: (802) 846-8394
jgrant@drm.com

*Attorneys for Plaintiff*

21